# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ILLINOIS COMPUTER RESEARCH, LLC,

      Plaintiff/Counterclaim Defendant,

          v.

BEST BUY STORES, L.P., and
BESTBUY.COM, LLC,

      Defendants/ Counterclaim Plaintiff.

No. 10 C 4298
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This dispute involves an alleged patent infringement regarding Rocketfish sound cards. Defendants ("Best Buy") deny that they have infringed Plaintiff's ("ICR") patent asserting that they are authorized to exploit the patent pursuant to the terms of a non-exclusive patent license and settlement agreement. Best Buy now moves for summary judgment, which Plaintiff opposes. For the following reasons, I grant Defendants' motion for summary judgment.

## I. STATEMENT OF FACTS

On June 14, 2010 ICR entered into a non-exclusive patent license and settlement agreement ("License Agreement") with Creative Products ("Creative") and Sears Roebuck and Co., regarding alleged infringement of U.S. Patent No. 7,154,819 ("the '819 Patent"). The License Agreement granted Creative, Creative's Affiliates, and Authorized Third Parties of Creative (including Creative's "customers" and "resellers") the right under the '819 Patent to make, use, import, export, offer for sale, sell, and otherwise exploit or dispose of Creative Products. Creative Products include "any and all . . . products. . . made, used, sold, offered for sale, or imported by or for" Creative and/or Creative's Affiliates. The License Agreement also grants a release to Creative, its Affiliates, and the Authorized Third Parties for claims relating to

the '819 patent, and ICR granted a covenant not to sue Creative, its Affiliates, and the Authorized Third Parties for infringement of any ICR Patent by Creative Products for a period of three years. The License Agreement expressly provides that "no right . . .to become a foundry for Third Parties is granted" pursuant to the Agreement. The license agreement between Creative and ICR does not expressly name Ectiva as an affiliate of Creative, nor does the agreement expressly grant a license to Best Buy.

This lawsuit accuses Best Buy Stores, L.P., and BestBuy.com, LLC of infringing the '819 Patent by selling certain "accused 'sound cards.'" The agreement for the manufacture of the sound cards ("the manufacturing agreement") was entered into by Best Buy China and Ectiva, a Singaporean company. The manufacturing agreement provides that in the event Best Buy engaged Ectiva to render consulting, design, or engineering services in connection with the Rocketfish cards, the parties would execute a Statement of Work describing the services to be rendered. Best Buy has not provided this Statement of Work.

Best Buy asserts that Rocketfish Sound Cards are sold by Creative (through its affiliate, Ectiva Pte Ltd. ("Ectiva")) to Best Buy's affiliates for ultimate sale on the BestBuy.com website and in Best Buy's stores. The sound cards are designed by Creative and manufactured pursuant to Creative's design and specifications. The sound cards are manufactured by Shenzhen Sea Star Technology Co., Ltd. ("Shenzhen"). Shenzhen manufactures these cards for Creative, and Creative in turn sells the sound cards, through its affiliate Ectiva, to Best Buy China. Best Buy only supplied guidelines relating to the use of Best Buy's Rocketfish trademark on product packaging and in the software driver installation software to Creative.

IRC disputes three material facts asserted by Best Buy: (1) that Ectiva is an affiliate of Creative, (2) that Ectiva is not serving as a foundry for Best Buy; and (3) that the sound cards are manufactured according to a design provided by Creative. For the following reasons, I reject IRC's objections.

## II. DISCUSSION

Best Buy argues that it is licensed under the License Agreement because it is an Authorized Third Party. Pursuant to Section 2.2 of the License Agreement, an entity is an "Authorized Third Party" if it "(1) makes, uses, imports, exports, offers for sale, sells, or otherwise exploits or disposes of (2) Creative products; (3) directly or indirectly, from, to, or with authority from Creative or Creative's Affiliates. Here, Best Buy argues that these requirements are satisfied because it sells the Rocketfish sound cards, which are Creative's product, with the authority of Evica, one of Creative's affiliates. It is undisputed that Best Buy sells the accused sound cards. What is in dispute is (1) whether Evica is an affiliate of Creative, and (2) whether the sound cards are Creative products.

A. Evica Is An Affiliate of Creative.

ICR attacks the evidence purporting to show that Ectiva and Creative are affiliates on two grounds. First, ICR objects to the authenticity of certain documents. Next, IRC challenges the personal knowledge of Best Buy's declarants. Neither objection is meritorious.

1. Authenticity Objections

First, ICR challenges the authentication of two exhibits to Jonathan Baker's ("Baker") declaration. The Baker Declaration contains two exhibits purporting to be "true and correct [copies] of the Singapore Accounting and Corporate Regulatory Authority March 2, 2011

official business profile[s]" for Ectiva and CTI (H) Pte Ltd. ("CTI"). Exhibit 2 purports to show that Ectiva is a subsidiary of CTI, and Exhibit 3 showing that CTI is a subsidiary of Creative Technoloy, Ltd., a party to the licensing agreement at issue. Taken together these two exhibits purport to show that Ectiva is an affiliate of Creative.

ICR argues that these two exhibits fail to meet the authentication requirements of Federal Rule of Evidence 901. Specifically, ICR argues that Baker's assertion that these exhibits are "true and correct" copies from the Singapore Accounting and Corporate Regulatory Authority are insufficient because Baker is an attorney for Skadden, Arps, Slate, Meagher & Flom LLP, and not an employee of Singapore Accounting and Corporate Regulatory Authority. Notably, ICR does not contend that these records, if authentic, are insufficient to show that Ectiva is an affiliate of Creative.

ICR's authenticity objection is meritless. The Baker declaration states, under oath and upon "personal knowledge" that the records are true and correct copies obtained from the Singapore Accounting and Corporate Regulatory Authority. Moreover, pursuant to Federal Rule of Evidence 902(3), "the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification." Here, ICR has not alleged that the documents are fraudulent, or presented evidence to show that they are not authentic. Furthermore, Defendants have obtained copies of the records which are "accompanied by a final certification" in satisfaction of Fed. R. Evid. 902(3). ICR has had one month to request to examine the records and dispute their authenticity, yet it has presented no evidence to show that the records are false or contradict the assertion that Ectiva is an affiliate of Creative. I accept the authenticity of the

exhibits to the Baker Declaration and find them sufficient to show that Ectiva is an affiliate of Creative.

## 2. Personal Knowledge Objections

ICR also makes objections to the personal knowledge of various declarants regarding the relationship between Ectiva and Creative as well as knowledge regarding the entity responsible for the design of the sound cards. I need not address these objections because, as noted *supra*, Defendants have submitted official records from the Singapore government demonstrating that Ectiva is an indirect subsidiary, and affiliate, of Creative Technology, Ltd.

## B. The Rockfish Sound Cards Are A Creative Product.

Creative Products are defined in the license agreement as:

> any and all methods, systems, products, solutions, or services offered, made, used sold, offered for sale, or imported by or for Creative or Creative's Affiliates in the past, now or in the future, including all updates, fixes, and versions thereof, including without limitation and for exemplary purpose only, the Sound Blaster products.

Having found that Ectiva is an affiliate of Creative, it is undisputed that Rocketfish sound cards are "products" that are offered, made, sold and offered for sale by Creative and its Affiliates. The sound cards are manufactured for Creative by Shenzhen, and Creative sells the cards through its affiliate Ectiva to Best Buy China, a Best Buy affiliate. The accused sound cards are licensed Creative Products.

## C. Creative Is Not Acting As A Foundry.

In its final argument in opposition to Best Buys' motion for summary judgment, ICR argues that Creative is acting as a foundry in contravention of Section 3.2 of the license agreement. As Best Buy explained, and ICR accepted, "a foundry is a company that exploits its rights under a patent license by making products designed by some other unlicensed party for

that other party's use and disposition, thereby laundering that other party's products under the patent license." *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381, 1383-1384 (Fed. Cir. 1996). As Best Buy argues, Creative cannot be a foundry because the sound cards were designed by Creative – not Best Buy.

Best Buy submitted declarations of Steven Erickson and Amy Prescott to reject ICR's contention that the relationship between Best Buy and Creative (and its affiliates) is a foundry relationship. The declarations overcome ICR's assertions by showing that Creative, not Best Buy, designed the accused sound cards. ICR, however, disputes that the Rockfish sound cards are Creative products, and raises unpersuasive objections to the personal knowledge of Best Buy declarants.

Amy Prescott is a Senior Product Manager for Best Buy and works out of Richfield, Minnesota. In her declaration, she sates that "I am informed and believe that the Creative-Rocketfish Sound Cards are designed . . . by or on behalf of [Creative]." She goes on to state that neither Best Buy nor its affiliates provided any specifications to Creative (or any other person or entity) for design, features, or functionality of the Creative-Rocketfish Sound Cards. Instead, she asserts that Creative provided the specifications for the sound cards to Best Buy for Best Buy's approval. The only specifications that Best Buy provided to Creative involved the use of the Rocketfish mark. ICR challenges Prescott's declaration on two grounds. First, because "the substance" of her testimony was provided to her by other Best Buy employees. Second, because she had no personal knowledge of exhibits 2, 3, or 4. I reject both of ICR's objections as to Prescott.

ICR's argument that Prescott lacks personal knowledge of the fact that Best Buy did not design the sound cards is unavailing. Prescott testified that she was "familiar with the particular transaction between Creative and Best Buy for the Rockfish Sound Cards" and that her "role in the transaction" was to l[ead] the timeline in order to launch the product for our launch date." She also stated that she worked on the packaging and testing of the product, and that she had knowledge regarding the product's specifications because she is the product manager and "everything has to come through [her] on it." Moreover, she testified that there would be no important decision regarding Best Buy's involvement in the product that she would be unaware of. Finally, Prescott testified not that any of the substantive information was provided to her by other employees, but rather, that the exhibits to her declaration physically came from other Best Buy employees who provided them to her to attach to the declaration.

As to the exhibits to Prescott's declaration, ICR's objections similarly should be disregarded. Prescott testified that although she had not personally seen the exact documents attached to her declaration until shortly before signing it, she stated that she was familiar with the documents, and had personal knowledge over them based on her knowledge and experience in her role at Best Buy. This is sufficient to establish their admissibility. *See Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 924 (7th Cir. 2002). Accordingly, I reject IRC's objections to the admissibility of the exhibits attached to Prescott's declaration.

As to Steven Erickson, ICR questions his knowledge about the entity responsible for the sound card's design. Erickson's declaration establishes that he is an employee of Creative Labs, Inc., with the title of Vice-President and General Manager of Audio-Video Products. Erickson confirmed in his deposition that he "managed the teams that developed" the Rocketfish sound

cards.  He further states that the soundcards were designed by Creative and manufactured for Creative by Shenzhen.  Morever, he confirms that neither Best Buy, nor its affiliates provided any specifications related to the design or function of the soundcards.  Erickson also testified in his deposition that any changes to the sound cards regarding changes to the "form, fit or function of the product" would need to be approved by him.  Accordingly, I reject ICR's personal knowledge objections as to Erickson's knowledge that Best Buy did not design the accused sound cards.

Having accepted the declarations of Prescott and Erickson, I find that Best Buy did not design the Rocketfish.  The declarations both establish that Best Buy did not design the Rocketfish products, and these declarations are unrefuted.  Moreover, the exhibits attached to Prescott's declaration show that Creative submitted designs to Best Buy for approval.

ICR also unpersuasively argues that evidence in the record supports the conclusion that Ectiva is serving as a foundry for the Rocketfish sound cards.  In support of this argument ICR points to the manufacturing agreement between Ectiva and Best Buy China.  The manufacturing agreement states that Ectiva will manufacture the product "in accordance with the specifications."  "Specifications" is defined as product, packaging, labeling and manufacturing specifications agreed in writing by the parties.  Finally, the manufacturing agreement also states that in the event that Best Buy desires to engage Ectiva in consulting, design, or engineering services, the parties would execute a "Statement of Work" that would include a description of the services to be rendered.  Because no Statement of Work has been presented, ICR summarily concludes that "Best Buy provided the specifications for the sound cards and Ectiva simply

manufactured them; i.e. Ectiva acted as a foundry for Best Buy." This argument fails and cannot defeat summary judgment.

As Best Buy explains, there is a clear explanation for why no Statement of Work has been submitted: "the function design and specifications for the accused products were completed by Creative beforehand." Here, both the declarations of Erickson and Prescott state that Creative brought the product to Best Buy with the "specs" already determined, and Creative presented the design and specifications to Best Buy for approval.

Moreover, the manufacturing agreement treats "specifications" and "consulting design and engineering services" separately. Whereas the specifications are a mandatory requirement of the "Manufacture and Purchase" provision of the manufacturing agreement, the "Consulting Design and Engineering Services" provision of the manufacturing agreement is optional ("Best Buy *may* engage" (emphasis added)). Therefore, the absence of a "Statement of Work" does not create the inference that Best Buy designed the accused sound cards.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.


ENTER:

James B. Zagel
United States District Judge

DATE: June 29, 2011